IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | * |
| | * |
| v. | *   Crim. Case No.:  SAG-10-0798 |
| | * |
| **ANTONIO BENJAMIN MARTINEZ,** | * |
| | * |
| Defendant. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In 2012, Antonio Benjamin Martinez pled guilty to attempted use of a weapon of mass destruction, in connection with his attempt to detonate a bomb at an armed forces recruiting center in Baltimore, Maryland. In accordance with the terms of his negotiated plea agreement, on April 6, 2012, United States District Judge J. Frederick Motz imposed a sentence of 300 months of incarceration, to be followed by a period of five (5) years of supervised release. ECF 89. On April 11, 2023, Martinez filed his second pro se Motion for Compassionate Release. ECF 128. The Government has filed a response in opposition, ECF 134, and Martinez filed a reply, ECF 135. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Martinez's motion will be denied.

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239–41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." *Id.* § 603(c)(1). Before a defendant's motion can be filed with the Court,

one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court (1) determines whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; and (2) considers whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction." 18 U.S.C. § 3582(c)(1)(A).

Here, Martinez adequately exhausted his administrative remedies. *See* ECF 128-1. Thus, this Court turns to whether he has established any "extraordinary and compelling reason[]" warranting further consideration of compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018). This Court also has authority to consider any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's determinations. *See United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020).

In the instant motion, Martinez argues two reasons he deems extraordinary and compelling: miscalculation of his advisory sentencing guidelines and miscalculation of his criminal history category. ECF 128. Neither contention is persuasive.

With respect to the advisory guidelines calculation, this Court notes that Martinez agreed to the applicable guidelines calculation in his plea agreement and at his rearraignment.  ECF 103-1 at 4; ECF 103-2 at 12. There have been no intervening changes in the structure of the guidelines or binding precedent that might alter those calculations or render them improper. This Court is reluctant to permit an end-run around a negotiated plea agreement by permitting a defendant to later urge the court to adopt a different calculation in the compassionate release context, absent some intervening change in the relevant laws or guidelines. That process would allow a defendant to obtain advantageous treatment from the Government (such as dismissal of serious charges) by purporting to agree to a guidelines calculation, only to seek more favorable recalculation once those serious charges have been irrevocably dismissed.[1] Compassionate release should not be employed to open the door to such tactics.[2]

Martinez's argument about his criminal history is similarly unavailing. As in every case, in his Presentence Report ("PSR"), the probation officer first calculated his criminal history using the standard method of criminal history computation, before determining whether any other

---

[1] For example, in this case, the Government dismissed a charge of attempted murder of Federal officers and employees in exchange for Martinez's negotiated plea.

[2] This Court notes that even if it were to entertain the argument and accept Martinez's contention that Guideline 2K1.4 should have applied instead of the guideline he agreed to in his plea agreement, his guideline range would have been 235-293 months once the terrorism cross-reference was applied, leading to only a seven-month difference between the high end of that range and the parties' agreed sentence. Of course, the Government still could have insisted on an agreement to a seven-month upward variance in exchange for dismissal of the attempted murder charge.

guidelines criteria required a different criminal history category. When calculated under the standard method looking at just his prior convictions, Martinez's criminal history category was III.[3] But the probation officer then properly applied U.S.S.G. § 3A1.4(b) because Martinez's offense of conviction is a terrorism offense. That guideline states that "the defendant's Criminal History category from Chapter Four (Criminal History and Criminal Livelihood) shall be a Category VI." *Id.* The PSR and the Court, then, appropriately calculated Martinez's criminal history as VI.  Ultimately, though, Martinez received a significant five-year downward variance from the resulting advisory guideline range, as a result of the favorable plea his counsel negotiated with the Government.

In sum, this Court sees no error in Martinez's sentencing, and certainly nothing amounting to an extraordinary and compelling reason warranting further consideration of compassionate release under the 18 U.S.C. § 3553(a) factors. This Court joins the Government in commending Martinez's continued efforts at rehabilitation and self-improvement.  He has clearly put himself on the right path. In the present posture of this case, however, Martinez's motion, ECF 128, must be denied by separate order.

Dated: August 18, 2023

                                                          /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge

---

[3] Martinez argues that III is too high because his juvenile dispositions should not have earned criminal history points. ECF 128.  This Court need not reach the issue, because under § 3A1.4(b), his criminal history category would be VI even if he had no prior criminal history.