IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. SAG-10-0798 |
| v. | ) | |
| | ) | |
| ANTONIO BENJAMIN MARTINEZ, | ) | |
| Defendant. | ) | |
| | ) | |

## SUPPLEMENTAL MOTION FOR A REDUCED SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Antonio Benjamin Martinez, through undersigned counsel, files this supplemental motion in support of his pro se motion for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 148. He presents several "extraordinary and compelling" reasons that support relief: (i) the existence of a stark disparity between the 300-month sentence he is serving and the much shorter sentence he likely would receive today; (ii) his youth and mental health struggles at the time of the offense, which rendered him more susceptible to negative influences, less culpable for his conduct, more likely to be rehabilitated, and less deserving of a lengthy sentence; and (iii) his exemplary institutional record over the past 14½ years, which demonstrates he has matured into a trustworthy, remorseful, hard-working adult who is unlikely to engage in future criminal conduct. In consideration of these extraordinary and compelling reasons, and after weighing the relevant sentencing factors under 18 U.S.C. § 3553(a), this Court should reduce Mr. Martinez's sentence to 210 months.

1

## BACKGROUND

### A. The Offense Conduct and Sentencing

In the summer of 2010, Mr. Martinez was 20 years old, drifting away from his family and friends, suffering from mental health challenges, and engaging in erratic behavior. He was a recent convert to Islam and unexpectedly got married while traveling in Boston in June 2010. PSR at ¶¶ 53-56. That summer, Mr. Martinez also was increasingly reading the writings of radicalized figures who believed the American military was unfairly targeting Muslim individuals around the world. By the fall, Mr. Martinez wanted to send a message that the military should stop its "war" against Islam, a feeling about which he posted on Facebook. PSR at ¶¶ 8-13.

In recorded calls that took place in October and November 2010, Mr. Martinez told a confidential informant (and later, an undercover FBI agent) that he wanted to detonate an explosive at a military recruiting center in Catonsville, Maryland. On December 8, 2010, with the assistance of the confidential informant and undercover agent, Mr. Martinez drove an SUV containing an inactive bomb (both of which were provided by the FBI) to the front of the recruiting center. From a vantage point nearby, Mr. Martinez attempted to detonate the device and was immediately arrested. He voluntarily waived his Miranda rights and provided a full confession.

Mr. Martinez pleaded guilty to a single count of attempted use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(3). ECF 77. He signed a written plea agreement with the government pursuant to Rule 11(c)(11)(C) of the Federal Rules of Criminal Procedure that contemplated a 300-month sentence. The 300-

month sentence was below the recommended guideline range of 360 months to life, which incorporated a terrorism enhancement under U.S.S.G. § 3A1.4, setting a final offense level of 40 and criminal history category of VI. PSR at ¶¶ 23-31, 42-43. On April 6, 2012, this court sentenced Mr. Martinez to 300 months' imprisonment to be followed by a five-year term of supervised release. ECF 89.

**B. Mr. Martinez's Post-Conviction Rehabilitation**

Mr. Martinez has been in federal custody since the date of his arrest, December 8, 2010. ECF 148-2 at 3. Thus far, he has served 14½ years of his sentence, which is the rough equivalent of a 204-month sentence including good-credit time awarded by the Bureau of Prisons. *Id.* During that time, Mr. Martinez has done everything in his power to make amends for his past mistakes and chart a new course for his future.

To this end, Mr. Martinez earned his General Equivalency Diploma in October 2013. ECF 148-4 at 3-4; ECF 113-2 at 4 (official test results). He completed a drug education program in 2016. ECF 113-2 at 3. He has taken dozens of classes in a variety of subjects including world history, astronomy, nutrition, money management, Spanish, and public speaking. ECF 148-4 at 3. He has completed L.E.A.D. programs titled Challenge for Change, Ready 4 Redemption, and Forgiveness. *See* ECF 113-2 at 5-20 (BOP certificates). He completed "Roots of Success," the BOP's environmental literacy and job training program that prepares individuals for reentry. ECF 148-4 at 5-7.

Mr. Martinez has also worked diligently throughout his incarceration. He initially worked as an orderly. ECF 113-2 at 2. For the past four years, he has worked

for UNICOR, a highly-sought-after and demanding position for which he has received high praise from his supervisors. ECF 148-4 at 2; *see* ECF 128-1 at 7. Additionally, Mr. Martinez has maintained an outstanding disciplinary record. He has received only four low-level citations, the last of which occurred nine years ago. ECF 128-1 at 6. Though Mr. Martinez is housed in a medium-security facility due to the nature of his conviction, the BOP assigns him a *low* risk of general recidivism. ECF 148-4 at 2.

### C.    Mr. Martinez's Prior *Pro Se* Motions for a Reduced Sentence

Mr. Martinez filed a *pro se* motion seeking a reduced sentence in January 2021, contending that his youth at the time of the offense was an extraordinary and compelling reason for relief. ECF 113. The government opposed relief at the time but stated it was "encouraged by [Mr. Martinez's] rehabilitative efforts and urges him to continue those, particular[ly] with regard to obtaining more substantial training in a particular job, trade or skill." ECF 119 at 2. The court denied the motion, finding that Mr. Martinez's youth, by itself, did not constitute an extraordinary and compelling reason for relief. ECF 120 at 3.

In 2023, Mr. Martinez filed a second *pro se* motion for a reduced sentence, this time asserting that the court improperly calculated his recommended guideline range. ECF 128. The government opposed relief but, again, stated it was "impressed and encouraged by the efforts that Mr. Martinez has made towards his rehabilitation." ECF 134 at 5. The government then described the significance of Mr. Martinez's growth in the dozen years following the offense:

> [Mr. Martinez] is to be commended for having compiled a disciplinary
> record that is devoid of any serious infractions. We were certainly

pleased to see that he is now teaching classes himself and otherwise seeking to pass along his skills to other inmates. It seems very likely that he is today a substantially different person from the one he was when he committed this offense and aggressively expressed his support for jihadist terrorism as a 20- and 21-year-old back in 2010.

ECF 134 at 5. The court agreed, "join[ing] the Government in commending Martinez's continued efforts at rehabilitation and self-improvement." ECF 137 at 4. However, the court found that the motion did not present an extraordinary and compelling reason for relief. ECF 137 at 3-4.

*          *          *

With the assistance of counsel, Mr. Martinez now presents the court with three extraordinary and compelling reasons that warrant a sentence reduction under § 3582(c)(1)(A): (i) an unwarranted disparity between the 300-month sentence he is serving and the much shorter sentence he likely would receive today; (ii) his youth and mental health struggles at the time of the offense, which rendered him more susceptible to negative influences and less deserving of a lengthy sentence; and (iii) his exemplary institutional record over the past 14½ years, which demonstrates that a 300-month sentence is greater than necessary to satisfy the goals of sentencing.

## JURISDICTION

Under the First Step Act, "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a sentencing court may

reduce a defendant's term of imprisonment "after considering the factors set forth in section 3553(a)," if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The statute directs courts to consider "extraordinary and compelling reasons" in a manner "consistent" with the Commission's policy statements." Initially, because there was no policy statement that applied to defendant-filed motions for a reduced term, courts retained broad discretion to determine what was extraordinary and compelling under the catchall provision. *See United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020). In November 2023, the Sentencing Commission issued an updated policy statement. *See* U.S.S.G. § 1B1.13 (2023). The statement identifies potential circumstances that may establish extraordinary and compelling reasons for relief, including family circumstances, old age, or serious illness. The statement also contains a catchall provision for "other reasons" that are "similar in gravity to those described." In the Fourth Circuit, the catchall provision has been interpreted as leaving intact courts' broad authority to determine what is extraordinary and compelling. *United States v. Brown*, Case No. 1:08-cr-00415-JKB (Dec. 14, 2023) ("Indeed, the catchall provision is a nod to *McCoy*, and other similar precedents, indicating that it is intended to largely maintain the status quo."); *United States v. Gaither*, Case No. 5:19-cr-00012, 2023 WL 7726622, at *2 (W.D.N.C. Nov. 15, 2023) ("The new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for relief."); *see Loper Bright*

*Enterp. v. Raimondo*, 144 S. Ct. 2244, 2257-58 (2024) (affirming that the interpretation of laws is "the proper and peculiar province of the courts").

Mr. Martinez has satisfied the statutory requirements needed to bring his compassionate release motion directly before the court. He filed a request for a reduced sentence with the warden at FCI Williamsburg on January 30, 2025. ECF 148-1 (Request for Reduction in Sentence). Because more than 30 days have passed since the request was submitted, this Court has jurisdiction to consider Mr. Martinez's motion for a reduced sentence.

**ARGUMENT**

I. **Mr. Martinez Presents "Extraordinary and Compelling Reasons" for a Reduced Sentence Under § 3582(c)(1)(A)**

    A. <u>The disparity between the 300-month sentence Mr. Martinez is serving and the significantly shorter term he likely would receive today is an extraordinary and compelling reason for relief</u>

This Court has held that a defendant presents extraordinary and compelling reasons for relief under § 3582(c)(1)(A) when he is serving a sentence that exceeds the term he likely would receive if sentenced today. *See, e.g., United States v. Elzey*, Crim. No. JKB-09-288, ECF 2027 (D. Md. Feb. 2, 2022) (reducing defendant's 262-month sentence to time served, the equivalent of a 151-month term following changes to career offender enhancement); *see also United States v. Decator*, 452 F.Supp.3d 320, 324 (D. Md. 2020) ("The fact that [a defendant], if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving, constitutes an 'extraordinary and compelling' reason justifying potential sentence reductions under § 3582(c)(1)(A)(i)."); *United States v. McCoy*, 981

7

F.3d 271, 286 (4th Cir. 2020) (affirming consideration of "'gross disparity' between [defendants' sentences] and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct.").

This court has addressed the change over the past decade in the severity of sentences imposed on federal offenders—even in cases involving violent conduct. In *United States v. Williams*, 2021 WL 3725435 (D. Md. Aug. 23, 2021), the court reduced the life sentence of a defendant who killed a woman to prevent her from cooperating with law enforcement. In explaining its decision, the court described the district-wide shift toward shorter sentences: "The average sentence imposed over the past five years for first-degree murder is 302 months." *Id.* at *3.

Yet, in this case, Mr. Martinez is serving virtually the same sentence even though he engaged in conduct that did not result in actual harm to any person; he was only 21 years old and struggling with mental health issues; and the materials he needed to commit the offense were provided by an undercover FBI agent. This is not to suggest that Mr. Martinez's criminal conduct was not serious, or that he did not knowingly take steps that could have led to real harm; but courts across the country have come to recognize that in some cases, a person convicted of a terrorism offense is not necessarily a "terrorist." *See United States v. Muhtorov*, 329 F. Supp. 3d 1289, 1302 (D. Colo. 2018) (sentencing defendant to 132 months for terrorism charge, resisting urge "to buy into the notion that 'a terrorist is a terrorist'").

For example, in *United States v. Wright*, 747 F.3d 399 (6th Cir. 2014), the Sixth Circuit affirmed the procedural and substantive reasonableness of sentences that

were far below the recommended guideline ranges for defendants convicted of terrorism offenses. The four co-defendants in *Williams* attempted to use a weapon of mass destruction to detonate an (inert) explosive at the base of a bridge. Although the recommended sentencing ranges were as high as 324-405 months, the district court sentenced each of the four co-defendants to terms ranging between 72 months and 138 months. (The 138-month sentence was imposed on the so-called "mastermind" of the plot who also received a leadership enhancement.) The district court explained that the substantial downward variance was due to "the inert nature of the explosives, the CHS's role in facilitating the offense, and various individual characteristics of the defendants." *Id.* at 407.

The below-guideline sentences imposed in *Williams* are not outliers. In *United States v. Lawless*, 979 F.3d 849 (10th Cir. 2020), the Tenth Circuit affirmed a 144-month sentence for a defendant convicted of attempting to detonate five homemade bombs in public locations. In *United States v. Abdin*, 801 F. App'x 893 (4th Cir. Feb. 5, 2020), the Fourth Circuit affirmed a 204-month sentence for a defendant convicted of attempting to provide material support to foreign terrorist organization. *See also United States v. Ahmed*, Case No. 15-cr-00049 (D. Minn.) (defendants convicted of conspiracy to commit murder based on attempt to leave U.S. to join terrorist group overseas sentenced to 120 months); *United States v. Abdurrahman*, Case No. 15-cr-00049 (____) (21-year-old defendant who pleaded guilty to terrorism offense after purchasing plane ticket to join organization overseas was sentenced to 120 months even though guideline range was 262-327 months); *see United States v. Van Haften*,

881 F.3d 543, 544 (7th Cir. 2018) (defendant who expressed desire to kill American soldiers and politicians and wanted to assist ISIS in enslaving Americans sentenced to 120 months).

Even in cases where defendants provided material support for terrorist activity, targeted a historical structure, or sought to inflict mass casualties, their sentences have been significantly shorter than 300 months. For example, in *United States v. Ahmed*, Case No. 1:10-cr-00413 (E.D. Va.) ECF 32, the defendant received a 276-month sentence after he conspired with FBI agents posing as al-Qaeda members to target metro stations in Washington, D.C. In *United States v. Smadi*, Case No. 3:09-cr-00294 (N.D. Tex.) ECF 88, the defendant received a 288-month sentence where he activated an inert explosive device to destroy a 60-story office tower in Dallas. In *United States v. Ferdaus*, Case No. 1:11-cr-10331 (D. Mass.) ECF 65, the defendant received a 204-month sentence for providing improvised explosive devices to agents posing as terrorists planning to destroy the Pentagon and the U.S. Capitol. *Id*, ECF 65. And in *United States v. Begolly*, Case No. 2:11-cr-00029 (W.D. Pa.) ECF 106, the defendant received a 102-month sentence for providing others with material for explosive devices and encouraging attacks against military facilities.

Mr. Martinez's planned conduct in this case, while serious, was far less serious than the conduct that occurred in the above-cited cases. The target of Mr. Martinez's plot was a small suburban recruiting center—not a mall (as in *Lawless*), a bridge (as in *Wright*), an office tower (as in *Smadi*), urban transportation hubs (as in *Ahmed*), or a military center with thousands of employees (as in *Ferdaus*). Similarly, Mr.

10

Martinez's conduct resulted in far less harm than that which typically results in a 300-month sentence in this district. *See United States v. Martin*, 2021 WL 3172278 (D. Md. July 27, 2021) (defendant received 300-month sentence for committing "multiple robberies and murders" during large-scale drug trafficking over many years even though he had "substantial prior [criminal] record" and numerous disciplinary infractions in the BOP).

For these reasons, this court should find that the unwarranted disparity between the 300-month sentence that Mr. Martinez is serving and the shorter sentence he likely would receive today is an extraordinary and compelling reason for relief.

> B. <u>Mr. Martinez's youth and susceptibility to negative influences at the time of the offense is an extraordinary and compelling reason for relief</u>

When Mr. Martinez started down the rabbit hole of radicalized religious beliefs that culminated in this offense, he was 20 years old and suffering from mental health challenges. Feeling lost, Mr. Martinez sought a sense of belonging. He converted to Islam, impulsively got married, and forged a new identity. These signs of Mr. Martinez's extreme vulnerability are important because the Fourth Circuit has held that a defendant's "relative youth" may be an extraordinary and compelling reason to grant relief under § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020). The Supreme Court has also emphasized that the "distinctive attributes of youth" diminish the penological justifications for imposing harsh sentences on

11

young offenders, "even when they commit terrible crimes." *Miller v. Alabama*, 567 U.S. 460, 472 (2012).

The "distinctive attributes of youth" addressed in *Miller* are: (1) immaturity, impetuousness, and "underdeveloped sense of responsibility"; (2) greater susceptibility to negative influences; (3) lesser ability to "extricate themselves from a criminogenic setting"; and (4) greater ability for reform and rehabilitation. These characteristics render youthful offenders less culpable than adults—and, therefore, less deserving of extremely punitive sentences. *See Roper v. Simmons*, 543 U.S. 551, 569-70 (2005).

Scientific data supports the consensus that young adults resemble juveniles in their ability to estimate risk, control their impulses, and consider future consequences. In fact, the parts of the brain responsible for impulse control, "self-regulation[,] and higher-order cognition" are not fully developed until a person is at least 25 years old. Juvenile Sentencing Project, *Consideration of Youth for Young Adults*, Quinnipac University School of Law, Jan. 2020, at 1-2 n.2 (collecting cases and scientific sources); *see also* United States Sentencing Comm'n, *Youthful Offenders in the Federal System*, May 2017, at 5 (defining youthful offenders as those aged 25 and under, noting the "growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average"). Similarly, young adults are, like juveniles, more susceptible to negative influences. Their decision-making is more the product of their environment and less the product of individual choice. *Roper*, 543 U.S. at 569.

12

For these reasons, courts and legislatures have increasingly come to understand that young adults (like juveniles) have a greater capacity for rehabilitation. *See Roper*, 543 U.S. at 570 (noting that a young person's character is not as well formed as that of an adult). Thus, in determining the appropriate sentence, courts should consider the greater likelihood that a youthful offender's "character deficiencies will be reformed." *Graham v. Florida*, 560 U.S. 48, 68 (2010).

A defendant's relative youth is especially "extraordinary and compelling" under § 3582(c)(1)(A) when he has built a solid record of rehabilitation despite serving a lengthy term. *Bellamy v. United States*, 474 F. Supp. 3d 777, 786 (E.D. Va. July 21, 2020) (finding extraordinary and compelling reasons based on youth at time of sentencing, length of sentence, disparity between current sentence and likely sentence today, and rehabilitation); *United States v. Sloan*, 3:93-cr-00028-GCM, ECF 119 (W.D.N.C. June 8, 2021) (relying in part on defendant's youth in finding extraordinary and compelling reasons for relief); *United States v. Maumau*, 2020 WL 806121, at \*5 (D. Utah Feb. 18, 2020) (finding defendant's age, length of sentence, and likelihood he would receive shorter term today extraordinary and compelling). This is true even in cases where the defendant was convicted of murder. *See United States v. Ramsay*, 2021 WL 1877963, at \*15 (S.D.N.Y. May 11, 2021) (reducing sentence for murder in aid of racketeering because defendant's youth, upbringing, and rehabilitation were extraordinary and compelling).

These same factors militate in favor of finding that Mr. Martinez's youth and emotional vulnerability at the time of the offense—when he was 21 years old and

13

struggling with his mental health—constitutes another extraordinary and compelling reason for relief. While Mr. Martinez's youth and mental health were taken into consideration at his original sentencing, they remain particularly relevant to this motion for a reduced sentence. At the original sentencing, the court was necessarily seeking to predict how an impetuous young man would develop in the future. Today, we have the answer. Through his tireless efforts (as described more fully below), Mr. Martinez has become an educated, reliable, trustworthy and mature adult with impeccable work and behavioral records. The person who Mr. Martinez is today reveals the true nature of his character, showing that his 25-year sentence is far "greater than necessary" to satisfy the purposes of sentencing.

C. <u>Mr. Martinez's exemplary institutional record over the past decade and a half is another extraordinary and compelling reason for relief</u>

Antonio Martinez's exemplary institutional record presents an additional extraordinary and compelling reason for relief, augmenting the likelihood he would receive a shorter sentence today and his relative youth at the time of the offense. "While 'rehabilitation alone cannot constitute an extraordinary and compelling reason for release[,]' *see United States v. Davis,* 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (citing 28 U.S.C. § 994(t)), . . . rehabilitation can supplement an otherwise insufficient claim for compassionate release." *United States v. Brown,* Crim. No. JKB-16-0427, 2022 WL 1664472, at *3 (D. Md. May 25, 2022).

During the 14½ years that Mr. Martinez has been in federal custody, he has taken advantage of every opportunity to make amends for his past mistakes and chart a new path forward. He earned his General Equivalency Diploma in October 2013.

14

ECF 148-4 at 3-4; ECF 113-2 at 4 (official test results). He completed a drug education program in 2016. ECF 113-2 at 3. He has taken dozens of classes in a variety of subjects including world history, astronomy, nutrition, money management, Spanish, and public speaking. ECF 148-4 at 3. He has completed L.E.A.D. programs titled Challenge for Change, Ready 4 Redemption, and Forgiveness. *See* ECF 113-2 at 5-20 (BOP certificates). He completed "Roots of Success," the BOP's environmental literacy and job training program that prepares individuals for reentry. ECF 148-4 at 5-7.

Mr. Martinez has also worked diligently throughout his incarceration. He initially worked as an orderly. ECF 113-2 at 2. For the past four years, he has helped establish the UNICOR program at FCI Williamsburg. ECF 128; ECF 128-1 at 3. He has specialized in building small components for the "Molle 4000," a backpack used by the U.S. military. Mr. Martinez takes great pride in doing this work for the military, considering it an act of redemption for his offense. And the correctional officers who oversee Mr. Martinez's work have given his work high praise. ECF 148-4 at 2; ECF 128-1 at 7 ("Great job!")

Additionally, Mr. Martinez has maintained an outstanding disciplinary record. He has received only four low-level citations,[1] the last of which occurred nine years ago. ECF 128-1 at 6. Though Mr. Martinez is housed in a medium-security facility

---

[1] In May 2013, Mr. Martinez was cited for refusing to obey an order. ECF 128-1 at 6. The same year, he was cited for "disruptive conduct" for allegedly "encouraging" a demonstration. In September 2014, he was cited for participating in an unauthorized meeting because there were four individuals in his cell at the same time. ECF 128-1 at 6. And in April 2016, Mr. Martinez was cited for refusing to obey an order when he admittedly refused to be pat searched by a female correctional officer. ECF 128-1 at 6. He has not had any infractions over the last nine years.

due to the nature of his conviction, the BOP assigns him a *low* risk of general recidivism. ECF 148-4 at 2.

### III.  After Weighing the Relevant Sentencing Factors Under 18 U.S.C. § 3553(a), This Court Should Reduce Mr. Martinez's Sentence to 210 Months

Once a court finds that a defendant has presented "extraordinary and compelling reasons" for a reduced term, it must consider "the factors set forth in section 3553(a) to the extent they are applicable" in determining whether, and to what extent, relief should be granted. 18 U.S.C. § 3582(c)(1)(A). Following *Pepper v. United States*, 562 U.S. 476 (2011), the court must consider post-offense developments, which provide "the most up-to-date picture" of Mr. Martinez and "shed[] light on the likelihood that [he] will engage in future criminal conduct." *Id.* at 492. In this case, after weighing all the relevant factors under § 3553(a), the court should conclude that a 210-month sentence is "sufficient but not greater than necessary" to satisfy the purposes of sentencing.

###### A.  The history and characteristics of Mr. Martinez and the nature and circumstances of his offenses

In determining the appropriate sentence, this Court should consider the history and characteristics of Mr. Martinez as well as the nature and circumstances of the offenses to which he pleaded guilty. 18 U.S.C. § 3553(a)(1).

Prior to his conviction in this case, Mr. Martinez did not have a substantive criminal record. Between the ages of 16 and 17, he was convicted of four theft and robbery offenses, each of which led to his brief detention by the Department of Juvenile Services. PSR at ¶¶ 33-39. At the time, Mr. Martinez was struggling with

severe mental health issues; in fact, he was briefly hospitalized at the age of 18. ¶ 57. In his late teens, after being released from the hospital, Mr. Martinez converted to Islam. At the age of 20, he got married and began the radicalization process. And shortly after turning 21, he committed the instant offense. When he was arrested, Mr. Martinez immediately waived his *Miranda* rights and confessed. Thereafter, he pleaded guilty and accepted full responsibility for his conduct. PSR at ¶¶ 7-19.

In his March 2025 letter to this court, Mr. Martinez calls his offense conduct "repulsive." He does not seek to make excuses for his behavior. He simply explains that at the age of 20, he felt traumatized and alone and was drawn into the welcoming arms of radical jihadists who offered clarity. Today, Mr. Martinez is deeply remorseful and understands he has only himself to blame for his choices. He is driven by a desire to contribute to the community he tried to harm and to "be part of something bigger." With the support of his family, from whom he had regretfully strayed as an adolescent, he promises he "will not let [the court], my people, or my country down again." ECF 148-3 at 3-5; *see* ECF 113-2 at 24-25 (letters from Mr. Martinez's sisters describing his kindness and the unusual nature of his behavior in 2010).

B. <u>Mr. Martinez presents a low risk of recidivism due to his sparse criminal history, maturity, model institutional record, and strong family support</u>

This court also should consider the need for the sentence to deter Mr. Martinez from engaging in future criminal conduct and to protect the public. 18 U.S.C. § 3553(a)(2)(B), (C). On this point, the court can confidently look at Mr. Martinez's conduct over the past 14½ years and the BOP's own assessment that he poses a *low*

17

risk of recidivism. As described elsewhere, Mr. Martinez earned his GED, took dozens of classes and programs, worked diligently through UNICOR on products used by the U.S. military, maintained a superb disciplinary record, and stayed close with his extended network of friends and family.

A particularly strong voice of support comes from Mr. Martinez's cousins, several of whom are members of the armed services. One cousin writes in a letter of support: "I take pride in these United States of America. I can assure you that with the help, guidance and support of family, close friends and mentors [Mr. Martinez] will not be led astray." ECF 113-2 at 21 (Cherita Brown letter); *see also* ECF 113-2 at 22 (Vernon Minor letter). Similarly, Mr. Martinez's sisters describe their brother as "bright and kind," describing him as a different person 15 years ago (as someone who seemed to have been "brainwashed"). ECF 113-2 at 24; ECF 113-2 at 25.

C.  <u>A 210-month sentence is a severe punishment that promotes respect for the law, provides just punishment, and avoids unwarranted sentence disparities</u>

Another factor for this Court's consideration is the need for the sentence to promote respect for the law, provide just punishment, and avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(2)(A), (a)(6).

Reducing Mr. Martinez's sentence would affirmatively promote respect for the law. Congress amended § 3582(c)(1)(A)(i) to expand the use of compassionate release, which the BOP scarcely used even though prisons were increasingly filled with inmates whose incarceration did not serve any legitimate goal of sentencing. The very title of the First Step Act's amendment to § 3582(c) made plain what Congress was trying to accomplish: "Increasing the Use and Transparency of Compassionate

Release." Indeed, the FSA eliminated the BOP as gatekeeper and gave individuals the power to petition the court directly for relief. It further required the BOP, within one year of the Act's passage, to submit a detailed report to Congress on the use of compassionate release.

Against that backdrop, it would honor Congress's legislative intent to grant Mr. Martinez compassionate release. For the reasons described above, the 300-month sentence Mr. Martinez is serving—for conduct that occurred when he was young and particularly vulnerable to negative influences—is greater than necessary to serve the goals of sentencing. Further, a 210-month sentence aligns with the terms imposed on other disillusioned young men who committed comparable offenses. It also recognizes that Mr. Martinez's consistent rehabilitative efforts over the last 14½ years have transformed him into a person different than the one who committed the offense.

D.    <u>Mr. Martinez has strong family support and a reliable release plan that will ease his transition to the community</u>

Upon Mr. Martinez's release, he plans to return to his mother's home, where he will be supported by an extended network of family and friends. *See* ECF 113-2 at 28. (Indeed, even when this court denied Mr. Martinez relief several years ago, it recognized that the letters he submitted "evidence[d] a great deal of support from his family and friends, which will serve him well upon his reentry into the community." ECF 120 at 4.) In addition to his strong family support, Mr. Martinez has marketable skills, a solid work history, letters of recommendation from his UNICOR supervisors, and an unwavering dedication to forge a new path forward.

19

## CONCLUSION

For the reasons stated here, this Court should find that Antonio Benjamin Martinez has presented "extraordinary and compelling" reasons for a reduced sentence. After weighing the relevant sentencing factors under 18 U.S.C. § 3553(a), this Court should reduce Mr. Martinez's sentence to 210 months, a term that is sufficient but not greater than necessary to satisfy the purposes of sentencing.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
for the District of Maryland

*/s/ Sapna Mirchandani*
Sapna Mirchandani
Assistant Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 344-0600
*Sapna_Mirchandani@fd.org*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Supplemental Motion for a Reduced Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) was filed electronically via CM/ECF, which automatically sends notice of such filing to the following registered CM/ECF user:

> Jefferson McClure Gray
> Assistant U.S. Attorney
> Office of the United States Attorney
> 36 South Charles Street, 4th Floor
> Baltimore, MD  21201

on this 29th day of April, 2025.

> /s/ *Sapna Mirchandani*
> Sapna Mirchandani